UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

QUICK CASH OF WESTCHESTER AVENUE LLC, d/b/a
QUICK CASH OF PORT CHESTER,

                                      Plaintiff,

                    - against -

VILLAGE OF PORT CHESTER, THE VILLAGE BOARD OF
THE VILLAGE OF PORT CHESTER, DENNIS PILLA, as
Mayor of the Village of Port Chester, and DANIEL
BRAKEWOOD, JOSEPH KENNER, SAVERIO TERENZI,
JOHN BRANCA, LUIS MARINO, and BART DIDDEN, as
members of the Village Board of the Village of Port Chester,

                                      Defendants.

------------------------------------------------------------------x

**OPINION AND ORDER**

11-CV-5608 (CS)

Appearances:
Steven M. Silverberg
Silverberg Zalantis LLP
Tarrytown, New York
*Counsel for Plaintiff*

Brian S. Sokoloff
Anthony F. Cardoso
Sokoloff Stern LLP
Westbury, New York
*Counsel for Defendants*

Seibel, J.

       Before this Court is Defendants' Motion to Dismiss the Amended Complaint pursuant to

Rule 12(b)(6).  (Doc. 14.)  For the following reasons, Defendants' Motion is GRANTED.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1-10-13

## I.  Background

       For the purposes of the present Motion, the Court accepts as true the facts (but not the conclusions) stated in Plaintiff's Amended Complaint ("AC"), (Doc. 8).  In light of my disposition of the Motion, I set forth only the facts relevant to Plaintiff's federal due process and equal protection claims under 42 U.S.C. § 1983.

    *A.  Factual Background*

       Plaintiff operates nineteen collateral loan broker (commonly referred to as pawn broker) locations throughout the New York metropolitan area.  (AC ¶ 12.)  In addition to the short-term lending services associated with pawn shops, Plaintiff's locations also sell retail items – including new jewelry, gifts, and commuter cards – and provide ATM machines and money transfer services.  (*Id.* ¶ 28; *id.* Exs. B-D.)

       Collateral loan brokers are regulated under New York state law, *see* N.Y. Gen. Bus. Law §§ 40-55, and all collateral loan brokers must obtain a license to operate in a particular locality, *id.* § 40 ("No person, corporation, partnership or firm shall hereafter carry on the business of collateral loan broker, without having first obtained from the mayor of the city or licensing authority of the local governing body where the business is to be carried on a license authorizing such person to carry on the same . . . .").  Specifically, New York law provides that:

> The mayor or such local licensing authority may from time to time grant, under his hand and the official seal of his office, to such citizens . . . as he shall deem proper and who shall produce to him satisfactory evidence of their good character, a license authorizing such person to carry on the business of a collateral loan broker . . . and no person, corporation, partnership or firm shall carry on the business of a collateral loan broker without being duly licensed . . . .

*Id.* § 41.

While the Village Code of Port Chester ("Code") incorporates the licensing requirements of New York state law, *see* Vill. of Port Chester, N.Y., Code § 206-19 ("No person shall engage in business as a pawnbroker without first obtaining an annual license therefor."), two of the Code's provisions are inconsistent with – and more stringent than – state law.  First, the Code prevents pawn brokers from charging an interest rate greater than 3% per month for the first six months, and 2% for each additional month, *id.* § 206-23, while state law prohibits charging an interest rate greater than 4% per month, N.Y. Gen. Bus. Law § 46.  Second, the Code requires that a broker hold a pledge for one year before selling it, Vill. of Port Chester, N.Y., Code § 206-24, while state law allows for sale of a pledge after it has remained for four months in a broker's possession, N.Y. Gen. Bus. Law § 48.

In 2010, Plaintiff began its efforts to open a Quick Cash location in the Village of Port Chester ("Village").  In May 2010, Plaintiff contacted Village Attorney Tony Cerreto to "provid[e] information about Plaintiff's operations and the requirements for a pawn broker's license." (AC ¶¶ 35, 36a.)  From July 30 through September 3, 2010, Plaintiff contacted Village representatives, including Cerreto, Mayor Dennis Pilla, and Trustee John Branca, nine times via telephone and email about "licensing requirements to open a pawn broker's retail location in the Village." (*Id.* ¶¶ 35, 36b-36j.)  Most of these communications seemed to concern the discrepancies between local and state law.  Specifically, Joseph DeCandido, Plaintiff's Chief of Staff and Operations, wrote a letter to Trustee Branca on July 30, 2010 stating, "[Quick Cash is] interested in opening a new outlet in the Village of Port Chester" and "respectfully request[s] a change in the Village Code with respect to [Sections 206-23 and 206-24] which would bring them in-line with the State's provisions . . . ." (*Id.* Ex. E.)  After speaking with Cerreto on August 12, DeCandido wrote Cerreto a follow-up email in which he provided the contact information for

Joel Epstein, an attorney in Clarkstown, New York with whom DeCandido had previously worked to harmonize inconsistent local and state legislation relating to pawn brokers, and attached his July 30 letter to Trustee Branca. (*Id.* Ex. F.)

On August 20, Cerreto advised DeCandido that the Village Board of Trustees ("Board") would discuss the inconsistent Code provisions at its next meeting, and on August 25, Cerreto informed DeCandido that he was reviewing the local law for compliance with state enabling legislation. (*Id.* ¶¶ 36f-36g.) On August 31, and again on September 1, DeCandido emailed Cerreto to request an update on the status of the Code revision. (*Id.* ¶¶ 36h, 36j; *id.* Exs. G, H.)

On September 7, Trustee Bart Didden opened the Board's discussion of a proposed moratorium on opening pawn shops in the Village by stating that the Village had recently received a communication about opening a pawn shop. (*Id.* ¶ 65; *id.* Ex. K.) The Board subsequently voted to refer the moratorium to the Village's Planning Commission (the "Commission"). (*Id.* Ex. K.)

Cerreto contacted DeCandido on September 10 to inform him both that the Board was considering a moratorium on opening pawn shops – during which time the Village's Planning Consultant would study the current zoning regulations relating to pawn shops – and that DeCandido should check the public record for further updates on conforming the more stringent provisions of the Code with state law. (*Id.* ¶ 36k.) Plaintiff made a Freedom of Information Law ("FOIL") request on the same day that it learned of the moratorium, (*id.* ¶ 36*l*), and made additional attempts to obtain information relating to pawn shop regulations from the Village through December 2010, including arranging a meeting with the Village Manager, which was cancelled at the "last minute" and never rescheduled, (*id.* ¶¶ 36m-36o).

On September 27, the Commission voted to recommend the moratorium on pawn broker operations, (*id.* ¶¶ 67, 69; *id.* Ex. L), which the Board subsequently adopted and later extended, (*id.* ¶ 70). The moratorium was further discussed at the November 1 Board meeting, during which several Village residents commented on the moratorium, and Trustee Didden stated that the Board "agreed that we need to set the zoning for this use." (*Id.* ¶¶ 71-72; *id.* Ex. M.)

After Plaintiff learned in fall 2010 of the passage of the Village's moratorium on opening a pawn shop, Plaintiff continued to look for locations for its Village outlet, allegedly based on its understanding that current zoning regulations permitted a pawn shop anywhere in the Village. (*Id.* ¶¶ 42-43.) In May 2011, Plaintiff leased a premises at 109 Westchester Avenue ("the Premises") located in the Village's C-2 commercial district, and made further inquiries – to which it received no response – about obtaining an application for a pawn broker's license. (*Id.* ¶¶ 45-46, 50.) At some point after signing the lease for the Premises, Plaintiff learned that two months earlier, in March 2011, the Village had passed Local Law 4, which restricted the permitted locations of pawn shops to the M-1 and M-2 industrial districts. (*Id.* ¶ 48; *id.* Ex. I.)[1]

Plaintiff then made additional FOIL requests regarding Local Law 4 and the procedure for applying for a pawn broker's license. (*Id.* ¶ 51.) In response, Plaintiff learned in July 2011 that the Village did not maintain an application form for a pawn broker's license. (*Id.* ¶ 52; *id.* Ex. J.) Plaintiff also received the minutes from the Board and Planning Commission meetings related to the pawn shop moratorium and Local Law 4. (*See id.* Ex. J.) Because of Local Law 4's zoning restrictions, Plaintiff states that there is no available location within the Village to

---

[1] The copy of Local Law 4 of 2011 annexed to the AC, (*see id.* Ex. I), indicates that its provisions have been codified in Sections 345-2, 345-56, 345-59, and 345-61 of the Code. In addition to restricting pawn shops to the industrial districts, Local Law 4 also prohibits locating a pawn shop within 1,000 feet of another pawn broker, secondhand goods dealer, auction house dealer, consignment house, school, church, or other place of public assembly and within 250 feet of a residential zoning district. (*Id.*)

open a Quick Cash location, other than a small area in a parking lot or the rear of a large building

that already houses industrial uses. (*Id.* ¶¶ 128-30; *id.* Ex. P.)

### B. Procedural History

Plaintiff initially filed this action in the Supreme Court of the State of New York,

Westchester County, on July 6, 2011, and Defendants removed it to federal court on August 12,

2011. (Doc. 1.) Plaintiff filed the AC on December 8, 2011, alleging due process and equal

protection violations under 42 U.S.C. § 1983, (*see* AC ¶¶ 218-49), and violations of New York

state law, (*see id.* ¶¶ 253-54, 260-69). Defendants filed the instant Motion to Dismiss on March

2, 2012. (Doc. 14.)

## II.  Motion to Dismiss

### A. Documents the Court May Consider

When deciding a motion to dismiss, the Court's "review is limited to the facts as asserted

within the four corners of the complaint, the documents attached to the complaint as exhibits,

and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet

Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *see Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

"When matters outside the pleadings are presented in response to a 12(b)(6) motion, a district

court must either exclude the additional material and decide the motion on the complaint alone or

convert the motion to one for summary judgment . . . and afford all parties the opportunity to

present supporting material." *Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000) (alteration

and internal quotation marks omitted).

There are circumstances, however, under which it is appropriate for a court to consider

documents outside of the complaint on a motion to dismiss. For example, when deciding a

motion to dismiss, the Court is entitled to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in [a] defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal quotation marks omitted).

"Rule 201 of the Federal Rules of Evidence permits judicial notice of a fact that is 'either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably . . . questioned.'" *United States v. Bryant*, 402 F. App'x 543, 545 (2d Cir. 2010) (summary order) (quoting Fed. R. Evid. 201). Further, it is well established that courts may take judicial notice of publicly available documents on a motion to dismiss. *See Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (courts can "look to public records . . . in deciding a motion to dismiss"). "In the motion to dismiss context, however, a court should generally take judicial notice 'to determine what statements [the documents] contain[ ] . . . not for the truth of the matters asserted.'" *Schubert v. City of Rye*, 775 F. Supp. 2d 689, 698 (S.D.N.Y. 2011) (alterations in original) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

1. Attachments to Defendants' Submissions

Defendants have submitted several documents in connection with their Motion, including:

- July 30, 2010 letter to Trustee Branca from DeCandido, (Sokoloff Decl. Ex. B);[2]

- August 12, 2010 email to Ceretto from DeCandido, (*id.* Ex. C);

- August 31, 2010 email to Ceretto from DeCandido, (*id.* Ex. D);

- September 1, 2010 email to Ceretto from DeCandido, (*id.* Ex. E);

- Village of Port Chester, N.Y., Local Law 4 of 2011, (*id.* Ex. F);

- February 7, 2011 Board meeting minutes excerpt, (*id.* Ex. G);

- December 6, 2010 Board meeting minutes excerpt, (Sokoloff Reply Decl. Ex. I);[3] and

- Village Code excerpts, (Ds' Mem. App'x A).[4]

I will consider all of these documents for purposes of this Motion.  Specifically, the July 30, August 12, August 31, and September 1, 2010 letters to Village personnel; Local Law 4; and February 7, 2011 Board meeting minutes are documents that are also attached to the AC as exhibits.  The December 6, 2010 Board meeting minutes and the Village Code are public documents[5] of which I take judicial notice for the fact that they exist, not for the truth of the matters asserted therein.  *See Novie v. Vill. of Montebello*, No. 10-CV-9436, 2012 WL 3542222, at *10 (S.D.N.Y. Aug. 16, 2012) (taking judicial notice of Planning Board meeting minutes on motion to dismiss as public records); *Missere v. Gross*, 826 F. Supp. 2d 542, 553 (S.D.N.Y. 2011) (taking judicial notice of village zoning code provision on motion to dismiss as public

---

[2] "Sokoloff Decl." refers to the Declaration of Brian S. Sokoloff. (Doc. 15.)

[3] "Sokoloff Reply Decl." refers to the Reply Declaration of Brian S. Sokoloff. (Doc. 17.)

[4] "Ds' Mem." refers to the Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Complaint. (Doc. 16.)

[5] Minutes of all Board meetings are available to the public at the Village Hall, and minutes from meetings held in 2011 or 2012 are available to the public at http://www.portchesterny.com/pages/PortchesterNY_BTrustMin/ (last visited Jan. 7, 2013).  The Village Code is available to the public at http://www.ecode360.com/PO0.00#PO0100 (last visited Jan. 7, 2013).

record); *Schubert*, 775 F. Supp. 2d at 695 n.3 (taking judicial notice of city council meeting minutes on motion to dismiss as public records; collecting cases).

    2.  Attachments to Plaintiff's Submissions

Plaintiff has also submitted several documents in connection with its opposition including:

- NYLS' Governor's Bill Jacket 1983, Chapter 321, (Silverberg Decl. Ex. 3);[6]

- NYLS' Governor's Bill Jacket 1960, Chapter 981, (*id.* Ex. 4);

- NYLS' Governor's Bill Jacket 1972, Chapter 890, (*id.* Ex. 5);

- Village of Port Chester, N.Y., Charter excerpts, (*id.* Ex. 6).

I will also consider all of these documents for the purposes of this Motion. The Governor's Bill Jackets and the Village Charter are public documents[7] of which I take judicial notice for the fact that they exist, not for the truth of the matters asserted therein. *See Zimmelman v. Teachers' Retirement Sys. of N.Y.*, No. 08-CV-6958, 2010 WL 1172769, at *8 & n.10 (S.D.N.Y. Mar. 8, 2010) (taking judicial notice of statutory materials on motion to dismiss), *Report and Recommendation adopted by* 2010 WL 2034436 (S.D.N.Y. May 20, 2010); *Wang v. Pataki*, 396 F. Supp. 2d 446, 453 & n.1 (S.D.N.Y. 2005) (taking judicial notice of New York Governor's Bill Jackets on motion to dismiss as public records); *cf. N.Y. 10-13 Ass'n v. City of N.Y.*, No. 98-CV-1425, 1999 WL 177442, at *5 (S.D.N.Y. Mar. 30, 1999) (taking judicial notice of legislative history on motion for judgment on pleadings).

---

[6] "Silverberg Decl." refers to the Declaration of Steven M. Silverberg in Support [*sic*] of Motion to Dismiss. (Doc. 19.)

[7] The Village Charter is available to the public at http://www.ecode360.com/PO0100#PO0100 (last visited Jan. 7, 2013).

B.  *Legal Standard*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

### III. Discussion

#### A. Ripeness

Although Plaintiff argues that this Court's subject matter jurisdiction over causes of action arising under federal law moots Defendants' contention that the AC does not contain any federal claims ripe for review, (*see* P's Mem. 17-18),[8] ripeness is a jurisdictional inquiry antecedent to a Court's ability to hear claims. Ripeness is "rooted in Article III's case or controversy requirements and the prudential limitations on the exercise of judicial authority," *S & R Dev. Estates, LLC v. Bass*, 588 F. Supp. 2d 452, 460 (S.D.N.Y. 2008), and "ensure[s] that a dispute has generated injury significant enough to satisfy the case or controversy requirement of Article III of the U.S. Constitution," *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002). This requirement prevents courts from "entangling [themselves] in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur, depending on the final administrative resolution." *Id.* The ripeness requirement defers federal review of claims until they have "arisen in a more concrete and final form." *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005). Ripeness is "especially important in land use and zoning disputes which are quintessential local issues that . . . are properly left in the first instance to local bodies that are better equipped than federal courts to address and resolve such issues." *Caldarola v. Town of Smithtown*, No. 09-CV-272, 2010 WL 6442698, at *7 (E.D.N.Y. July 14, 2010) (internal quotation marks omitted), *Report and Recommendation adopted by* 2011 WL 1336574 (E.D.N.Y. Apr. 4, 2011).

---

[8] "P's Mem." Refers to Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss the Complaint. (Doc. 20.)

1.  Final Decision Requirement

Before any land use dispute – whether brought as a takings, due process, or equal

protection claim – is ripe for review, Plaintiff must satisfy the finality requirement of ripeness.

*Lost Trail LLC v. Town of Weston*, 289 F. App'x 443, 444 (2d Cir. 2008) (summary order);

*Murphy*, 402 F.3d at 348; *Caldarola*, 2010 WL 6442698, at *7.  The relevant test is whether "the

government entity charged with implementing the regulations has reached a final decision

regarding the application of the regulations to the property at issue." *Williamson Cnty. Regional

Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985).  Although

initially developed in the context of takings, the *Williamson* finality requirement has been

extended to equal protection and substantive due process claims in the land use context.  *See

Dougherty*, 282 F.3d at 88-89 (equal protection and due process);[9] *Southview Assocs. Ltd. v.

Bongartz*, 980 F.2d 84, 96-97 (2d Cir. 1992) (substantive due process).  "A final decision is 'a

definitive position on the issue that inflicts an actual, concrete injury.'"  *R–Goshen LLC v. Vill.

of Goshen*, 289 F. Supp. 2d 441, 448 (S.D.N.Y. 2003) (quoting *Williamson*, 473 U.S. at 193),

*aff'd sub nom. R–Goshen LLC v. Andrews*, 115 F. App'x 465 (2d Cir.2004).

It is clear from the record that Plaintiff has not received a final decision relating to a

pawn broker's license, and thus its equal protection and substantive due process claims are not

ripe for adjudication.  First, the AC does not allege that Plaintiff actually made an application

with the Village for a pawn broker's license.  Although Plaintiff characterizes its

---

[9] Plaintiff argues that, as articulated in *Dougherty*, the extension of the *Williamson* finality requirement to equal protection and due process claims applies only to land use challenges – specifically, the denial of development permits – and not the denial of a pawn broker's license. (P's Mem. 18-19.) I find Plaintiff's semantics unavailing. The license at issue is a statutory prerequisite to Plaintiff's ability to operate in the Village, and it is irrelevant if this required approval is titled a "license to conduct an occupation," (*Id.* at 20), or a land use permit. Rather, the gist of Plaintiff's equal protection and substantive due process claims is that the Village prevented it from opening a pawn shop in the Village by denying the required license and changing the applicable zoning requirements – a "land use and zoning dispute[]," *Caldarola*, 2010 WL 6442698, at *7 (internal quotation marks omitted), to which the *Williamson* finality requirement applies.

communications with Village personnel from May to September 2010 as "attempts to obtain a

license," (AC ¶ 40), it fails to plead facts indicating that it submitted any type of application for

the license at any time, and instead relies on the Village's lack of an application form or a

procedure for obtaining a license to excuse its inaction, (*see id.* ¶¶ 52, 54). Indeed, Plaintiff

states that it continued to make inquiries about how to obtain an application for the license even

after it leased the Premises in May 2011. (*Id.* ¶¶ 45-46.) The AC does plead facts sufficient to

suggest that Plaintiff informed Village personnel that it wanted to open a pawn shop in Port

Chester – particularly DeCandido's July 30 letter to Trustee Branca stating "[Quick Cash is]

interested in opening a new outlet in the Village of Port Chester," (*id.* ¶¶ 35-36p, 45, 47; *id.* Ex.

E) – and the Village's subsequent actions in instituting the moratorium and changing pawn shop

zoning regulations indicate that Village personnel had knowledge of Plaintiff's intention to open

an outlet in the Village. But these generalized, detail-free statements of interest do not amount to

an application, particularly given that state law requires sufficient information for the local

licensing authority to determine if the application is "proper" and the applicant of "good

character." N.Y. Gen. Bus. Law § 41. And the absence of an official application form is

irrelevant; there is nothing stopping an applicant from putting the relevant information in a letter

and stating that the letter's purpose is to apply for a license.

Even if Plaintiff's communications about its desire to open a pawn shop were sufficient

to constitute an application for the necessary license, Plaintiff nonetheless fails to allege that the

Village denied its application or otherwise issued any decision – formal or informal – with

respect to the license. Although Plaintiff states that it believes that "no pawn broker's license

has been issued in the Village within the memory of anyone on the Board," (AC ¶ 53), Plaintiff

characterizes the Village's response to its overtures about opening a pawn shop as "silence,"

"stalling tactic[s]," "[being] kept in the dark," (*id.* ¶¶ 39-40, 47), "delay[] without cause," and a

"*defacto* [*sic*] denial," (P's Mem. 15, 19), none of which constitute an actual denial of Plaintiff's

request for the license. Delay in rendering a final decision does not inflict the type of concrete

injury necessary to render a claim ripe for federal review. *See Williamson,* 473 U.S. 176-82, 191

(not ripe despite eight year delay in rendering final decision); *Dougherty,* 282 F.3d at 89 (not ripe

despite five-and-a-half year delay). And state-law remedies exist for applicants to compel

municipalities to act. *See, e.g., Oppenheim v. O'Connell,* 943 N.Y.S.2d 779, 779 (2d Dep't

2012) (using Article 78 to compel reinstatement of license); *Karl v. N.Y.C. Dep't of Citywide*

*Admin. Servs.,* No. 108703/08, 2008 WL 4916302, at *1 (N.Y. Sup. Ct. Sept. 24, 2008) (using

Article 78 to compel acceptance of application for contractor license). Thus, while Plaintiff has

demonstrated that the Village did not promptly address its inquiries about the necessary license,

Plaintiff has not shown that it ever applied for or that the Village ever issued a final decision with

respect to the license.

### 2. Futility Exception

The finality requirement is also not satisfied if Plaintiff has not sought, for example, a

variance or a waiver of the pertinent regulations. *See Williamson,* 473 U.S. at 193-94; *Murphy,*

402 F.3d at 348. Plaintiffs need not, however, apply for a variance or exception from the

regulations if such action would be futile. *See Murphy,* 402 F.3d at 349.

The Second Circuit has not yet determined "what the precise contours of the futility

exception are." *RKO Del., Inc. v. City of New York,* No. 00-CV-2592, 2001 WL 1329060, at *4,

(E.D.N.Y. Aug. 30, 2001). Absent a clear mandate from the Second Circuit, district courts "have

found that in order to invoke the futility exception, a plaintiff must demonstrate: (1) the

inevitability of refusal of their application, taking into consideration factors such as the

defendants' hostility, delay and obstruction; and (2) that plaintiff has filed at least one meaningful application." *Osborne v. Fernandez*, No. 06-CV-4127, 2009 WL 884697, at *5 (S.D.N.Y. Mar. 31, 2009) (internal citations and quotation marks omitted).

With respect to the license, Plaintiff makes conclusory allegations that the absence of an application form and the Board's motive underlying the passage of Local Law 4, (AC ¶ 178), rendered the likelihood of the Village granting Plaintiff the necessary license "non-existent," (*id.* ¶ 179), but does not plead specific facts sufficient to show the inevitability of Village personnel refusing to grant Plaintiff the license. The futility exception applies only when the relevant decisionmaker "lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied." *Murphy*, 402 F.3d at 349. The Village's failure to maintain a license application does not plausibly indicate anything one way or the other, and while the motive behind its subsequent rezoning, (*see* AC ¶¶ 178-79), indicates hostility to pawn shops in commercial districts, it is not sufficient to support the inference that the Village would never issue the Plaintiff a license to operate a pawn shop – particularly in a location, admittedly few, permitted under the current zoning regulations. *See S & R Dev. Estates*, 588 F. Supp. 2d at 463 (allegations of hostility are insufficient to invoke the futility exception); *Homefront Org., Inc. v. Motz*, 570 F. Supp. 2d 398, 408-09 (E.D.N.Y. 2008) (same; collecting cases). "[M]ere doubt . . . that [an] application will be denied" is insufficient to invoke the futility exception. *Rivendell Winery, LLC v. Town of New Paltz*, 725 F. Supp. 2d 311, 319 (N.D.N.Y. 2010).

Likewise, Plaintiff has failed to allege that it requested that the Board reconsider its pawn shop zoning regulations or sought a use variance to open a pawn shop at the Premises, precluding me from finding that it submitted the minimum requirement of one "meaningful application." *See Murphy*, 402 F.3d at 348 (conditioning federal court review on the submission

15

of "at least one meaningful application for a variance"); *see also Goldfine v. Kelly*, 80 F. Supp. 2d 153, 160 (S.D.N.Y. 2000) ("[O]ften courts have required more than one rejected application to invoke the futility exception.") Plaintiff only makes conclusory allegations that a use variance for the Premises would be denied or that the Board would not reconsider rezoning the commercial district in which the Premises are located. (*See* AC ¶¶ 181-90.) Although Plaintiff alleges that the recent passage of Local Law 4 renders it unlikely that the Board would reconsider the commercial district zoning for pawn shops, allegations of hostility or bad faith are insufficient to invoke the futility exception. *See Homefront Org.*, 570 F. Supp. 2d at 408 (collecting cases).

Finally, Plaintiff asserts that it would have been futile to apply for a use variance because it could not have established the criteria required under New York law. *See* N.Y. Village Law § 7-712-b(2)(b).[10] In particular, Plaintiff could not have provided "dollars and cents" proof that the Premises (a retail space) would have yielded a reasonable return only as a pawn shop. (AC ¶¶ 187-90.) The plaintiff in *Westhab, Inc. v. City of New Rochelle*, No. 03-CV-8377, 2004 WL 1171400 (S.D.N.Y. May 3, 2004), advanced the same argument as does Plaintiff here – that seeking a variance was futile because it could not provide proof that the land could never yield a reasonable economic return from the uses currently permitted under zoning regulations. *Id.* at *11. There, the Court held that, without applying for a variance even once, the Plaintiff was

---

[10] The text of the statute states:

No such use variance shall be granted by a board of appeals without a showing by the applicant that applicable zoning regulations and restrictions have caused unnecessary hardship. In order to prove such unnecessary hardship the applicant shall demonstrate to the board of appeals that for each and every permitted use under the zoning regulations for the particular district where the property is located, (1) the applicant cannot realize a reasonable return, provided that lack of return is substantial as demonstrated by competent financial evidence; (2) that the alleged hardship relating to the property in question is unique, and does not apply to a substantial portion of the district or neighborhood; (3) that the requested use variance, if granted, will not alter the essential character of the neighborhood; and (4) that the alleged hardship has not been self-created.

N.Y. Village Law § 7-712-b(2)(b).

estopped from arguing that there was no possibility that a variance would be granted. *Id.* As noted earlier, "mere doubt" is insufficient to invoke the futility exception, *Rivendell Winery*, 725 F. Supp. 2d at 319, and while a variance request might well be denied, nothing in the AC allows me to conclude that should Plaintiff make an application for a variance, it would certainly be denied.[11]

### 3. Equal Protection Claim

Even if Plaintiff's equal protection claim were ripe for review, I would dismiss it for failure to state a claim. Plaintiff advances a "class of one" equal protection claim, (*see* P's Mem. 10-13), alleging that Defendants have treated pawn brokers differently from other similarly situated businesses – second hand gold dealers, consignment shops, banks, and retail stores, (*see id.* at 12; AC ¶ 157) – with respect to both licensing and zoning in the Village, (*see* AC ¶¶ 157-77). To succeed on a "class of one" claim, Plaintiff must establish that "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy" and "the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (internal quotation marks omitted). Plaintiff has not alleged facts rendering such a conclusion plausible.

---

[11] Furthermore, the AC establishes that Plaintiff knew about the Village's moratorium on opening pawn shops and concurrent study of pawn shop zoning before it leased the Premises. (AC ¶¶ 42-43 ("Shortly thereafter [August 25, 2010], Plaintiff's representatives learned that the Village was in fact instituting a moratorium on the ability to open a pawn shop within the Village, which moratorium was ultimately adopted and then extended. Nonetheless, Plaintiff continued to look for locations for a pawn shop, based upon the understanding that such use was permitted anywhere in the Village.").) While Plaintiff did inquire as to the status of the moratorium on March 17, 2011, (*id.* ¶ 36p), it was inadvisable to lease the Premises in May 2011 without making any further inquiry or conducting research in public records to determine the current status of the moratorium or any potential subsequent zoning changes resulting from the Commission's study.

Contrary to Plaintiff's position, (*see* P's Mem. 12), the pleading standard set forth in

*Iqbal* applies to Plaintiff's allegations, *see Ruston v. Town Bd. of Skaneateles*, 610 F.3d 55, 59

(2d Cir. 2010) ("*Iqbal* supersedes the 'general allegation' deemed sufficient [for "class of one"

equal protection claims on a motion to dismiss] in [*DeMuria v. Hawkes*, 328 F.3d 704, 707 (2d

Cir. 2003)]. Under *Iqbal*, factual allegations must be sufficient to support necessary legal

conclusions."). Based on the Plaintiff's allegations, the court must determine at the motion to

dismiss stage if

> it is plausible that a jury could ultimately determine that the
> comparators are similarly situated. Thus, well-pled facts showing
> that the plaintiff has been treated differently from others similarly
> situated remains an essential component of such a claim and
> conclusory allegations of selective treatment are insufficient to
> state an equal protection claim.

*Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 698 (S.D.N.Y. 2011)

(alterations and internal quotation marks omitted).

Plaintiff must identify "'an extremely high degree of similarity'" between it and the

entities to whom it compares itself. *Ruston*, 610 F.3d at 59 (quoting *Clubside*, 468 F.3d at 159).

The AC fails to do so. Plaintiff alleges that pawn brokers are similar to banks because they loan

money, (AC ¶ 104); similar to retail stores because they sell goods, (*id.*); and have similar

business models as second hand gold dealers and consignment shops, (*see id.* ¶ 157). Although

Plaintiff has identified isolated similarities between these entities and pawn shops, these

comparisons are at a high degree of generality; Plaintiff has not pleaded specific facts showing

"an extremely high degree of similarity," *Clubside*, 468 F.3d at 159, between pawn shops and

these entities. Identifying one similarity between pawn shops and other sorts of establishments

hardly suffices even to show that they are "similarly situated in all material respects," *Missere*,

826 F. Supp. 2d at 561 (internal quotation marks omitted) (selective enforcement equal

18

protection claim standard), let alone that "no rational person could regard the circumstances of the plaintiff to differ from those of [its] comparator[s]," *id.*  Plaintiff's selection of single attributes of its shops for comparison purposes, while ignoring the unique combination of attributes they possess, does not render it plausible that a jury could determine that pawn shops were so similar to banks, retail stores, second hand gold dealers, and consignment stores that any alleged selective treatment of pawn shops was unjustified.  Using my "judicial experience and common sense," *Iqbal*, 556 U.S. at 679, it is plain that pawn shops – considering their business as a whole – differ significantly from the proposed comparators.  Further, with respect to licensing, Plaintiff has not shown – and cannot show – that Defendants treated Plaintiff differently from those other establishments, as New York law only subjects pawn brokers to the relevant licensing requirements, *see* N.Y. Gen. Bus. Law § 40, and Plaintiff makes no allegations that the Village treated it differently than another pawn broker license applicant.

    4.  <u>Substantive Due Process Claim</u>

    Even if Plaintiff's substantive due process claim[12] were ripe for review, I would also dismiss it for failure to state a claim.  Plaintiff claims that state law confers on it a property right in the pawn broker's license that, prior to the zoning law, would have permitted it to open a pawn shop location anywhere in the Village, and that Defendants have no discretion to deprive it of that property interest.  (P's Mem. 14-15.)  "In order to demonstrate a substantive due process claim in a land use case, it is well-settled that a party must first establish that it had a constitutionally protected property interest, and then establish the deprivation of that interest was without due process of law."  *R–Goshen*, 289 F. Supp. 2d at 450.  "[I]n order to establish a federally protectable property interest . . . , the plaintiff must show that . . . there was no

---

[12] Plaintiff's brief makes clear that it is only alleging a substantive due process claim relating to the pawn broker's license, not any procedural due process claims.  (P's Mem. 13, 16.)

uncertainty regarding his entitlement to [a license] under applicable state or local law, and the issuing authority had no discretion to withhold it in his particular case." *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 n.1 (2d Cir. 1999).

Although Plaintiff alleges that the Village has no discretion under state law to deny a pawn broker's license, (AC ¶¶ 147, 243; P's Mem. 14), the statute's text directly contradicts this assertion. Section 41 of New York's General Business Law states, "The mayor or such local licensing authority *may* from time to time grant . . . *to such citizens . . . as he shall deem proper* and who shall produce to him *satisfactory evidence of their good character*, a license authorizing such person to carry on the business of a collateral loan broker . . . ." N.Y. Gen. Bus. Law § 41 (emphasis added). The plain language of the statute gives discretion to the mayor or local licensing authority to grant the license "as he shall deem proper," and to limit licenses to those who meet the standard of "good character." *Id.* Thus, as here, "[i]f the deciding authority has discretion to grant or deny a permit or application and has not yet acted, the applicant has no vested property right to issuance of the permit or a favorable decision on the application" and cannot allege a constitutionally protected property interest. *R–Goshen*, 289 F. Supp 2d at 450-51 (collecting cases). Nor has Plaintiff plausibly alleged that the Village's conduct was "so outrageously arbitrary as to constitute gross abuse of governmental authority." *Natale*, 170 F.3d at 262. For one thing, Defendant's failure to issue a license cannot meet this standard where Plaintiff never made a formal application.

B. *State Law Claims*

A federal court may exercise supplemental jurisdiction over state-law claims "that are so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). A district court may decline to exercise its

supplemental jurisdiction where all claims over which the court has original jurisdiction have been dismissed. *Id.* § 1367(c)(3).

Following dismissal of Plaintiff's federal equal protection and substantive due process claims, the Court must balance judicial economy, convenience, fairness, and comity in exercising its discretion whether to assert supplemental jurisdiction over the remaining state-law claims. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). As here, where "[t]here is no diversity between the parties," "considerations of "[c]onvenience and comity weigh heavily against this Court retaining jurisdiction." *Cintas Corp. v. Unite Here*, 601 F. Supp. 2d 571, 581 (S.D.N.Y. 2009). Further, "[w]hen the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon*, 484 U.S. at 350 (footnote omitted). Indeed, it is appropriate to decline to exercise supplemental jurisdiction when the federal claims are dismissed any time before trial, *see Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006), and this Court routinely does so. Particularly because Plaintiff's remaining state-law claims relate to "matters of local concern more aptly suited for local resolution," *Murphy*, 402 F.3d at 348, I decline to exercise supplemental jurisdiction over the remaining state-law claims.[13]

C. *Leave to Amend*

Leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Zucker v. Five Towns Coll.*, No. 09-CV-4884, 2010 WL 3310698, at *3 (E.D.N.Y. Aug. 18, 2010). It is within the discretion of the district court to grant or deny leave to amend,

---

[13] As I have dismissed all of Plaintiff's claims, I need not address Defendants' arguments about the dismissal of claims against individually named Defendants. (*See* Ds' Mem. 5.)

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007), and "[l]eave to amend,

though liberally granted, may properly be denied for: undue delay, bad faith or dilatory motive

on the part of the movant, repeated failure to cure deficiencies by amendments previously

allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility

of amendment, etc.," *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (internal

quotation marks omitted).  Furthermore, a district court has no obligation to grant leave to amend

*sua sponte. See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("[N]o court can be said to

have erred in failing to grant a request [to amend the complaint] that was not made.'); *Ariel (UK)*

*Ltd. v. Reuters Grp., PLC*, 277 F. App'x 43, 45-46 (2d Cir. 2008) (summary order) (district court

did not exceed its discretion in not *sua sponte* granting leave to amend where plaintiff had

already amended complaint once and amendment would have been futile); *see also Cuoco v.*

*Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (leave to amend should be denied as futile where

problem with complaint is substantive and better pleading would not cure it).

　　At a pre-motion conference held on November 10, 2011, Defendants sought leave to file

a motion to dismiss, and they had previously submitted a letter outlining the grounds on which

they intended to move.  (Doc. 5.)  At the conference, I gave Plaintiff leave to amend its

complaint, advising it to bolster its futility allegations and that no equal protection claim can

exist absent allegations that the Village treated Plaintiff differently from other highly similar

comparators.  In these circumstances, Plaintiff's failure to fix deficiencies in its previous

pleadings is alone sufficient ground to deny leave to amend *sua sponte. See Gallop*, 642 F.3d at

369 (district court did not err in dismissing claim with prejudice in absence of any indication

plaintiff could or would provide additional allegations leading to different result); *Payne v.*

*Malemathew*, No. 09-CV-1634, 2011 WL 3043920, at *5 (S.D.N.Y. July 22, 2011) ("That

Plaintiff was provided notice of his pleading deficiencies and the opportunity to cure them is sufficient ground to deny leave to amend *sua sponte*."); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted); *see also Ruotolo*, 514 F.3d at 191 (affirming denial of leave to amend "given the previous opportunities to amend"). Further, Plaintiff has not requested leave to file a Second Amended Complaint or otherwise suggested that it is in possession of facts that could cure the pleading deficiencies. Accordingly, I decline to grant Plaintiff leave to amend *sua sponte* with respect to the dismissed Section 1983 claims. *See, e.g., Gallop*, 642 F.3d at 369; *see also Walton v. Morgan Stanley & Co.*, 623 F.2d 796, 799 n.7 (2d Cir. 1980) ("[A]ppellants never sought leave to amend their complaint either in the district court or as an alternative form of relief in this court after [appellee] raised the issue of the sufficiency of appellants' complaint. Accordingly, we see no reason to grant such leave *sua sponte*.").

23

## IV.  Conclusion

For the reasons stated above, Plaintiff's first and second causes of action for due process and equal protection violations under 42 U.S.C. § 1983 are dismissed with prejudice  Plaintiff's remaining claims are dismissed without prejudice.  The Clerk of Court is respectfully directed to terminate the pending Motion, (Doc. 14), and close the case.

**SO ORDERED.**

Dated: January _10_, 2013
       White Plains, New York

_Cathy Seibel_
CATHY SEIBEL, U.S.D.J